Johnson vs. First National Bank of Ashland.

JOHNSON, Respondent, vs. FIRST NATIONAL BANK OF ASH-LAND, Appellant.

*March 19 — April 9, 1891.*

*Corporation liable for acts of agents: Negligence: Master and servant: Instructions.*

1. A corporation, whose building superintendent or foreman causes an excessive weight of snow and *débris* to be thrown and left upon the roof of a shed, in consequence of which it falls upon and injures an employee who works under it by his direction, is guilty of negligence, which renders it liable to such employee, if he himself is free from contributory negligence.

Johnson vs. First National Bank of Ashland.

2. Such employee cannot be held to have assumed the risk of working under such shed, if he had no knowledge of the danger caused by the increased weight upon the roof.

3. The corporation is not relieved from liability by the fact that it intrusted the construction of the shed to skilful workmen, or that it was stronger than such sheds usually are.

4. Such superintendent and foreman, having power to hire and discharge laborers and to direct their work, are not the fellow-servants of such laborers, and their negligence is not that of fellow-servants.

5. The accident, being the result not of the mere placing such excessive weight on the shed-roof, but of suffering it to remain there, the negligence causing it was not that of the fellow servants who placed it there by direction of the superintendent or foreman, but of the latter.

6. The knowledge of the superintendent that it was dangerous to work under such shed, is to be deemed the knowledge of the corporation, and he will be assumed to have had such knowledge if, by the exercise of reasonable care, he might have had it.

7. An instruction that "if you find that the plaintiff was not guilty of any want of ordinary care which contributed directly towards his injury, he is entitled to recover," given in connection with a full discussion of every question involved in the case and of all the conditions of plaintiff's recovery or defeat, could not possibly mislead the jury so that they would understand that their finding that fact alone would entitle him to recover.

APPEAL from the Circuit Court for *Ashland* County.

This is an action for personal injuries alleged to have been caused by the negligence of the agents of the corporation defendant. All the essential facts are stated in the opinion. The defendant appeals from a judgment for the plaintiff.

For the appellant there was a brief by *Tomkins, Merrill & Smith,* and oral argument by *W. M. Tomkins.* They argued that the corporation, having provided suitable materials and intrusted the erection of the shed to skilful workmen, not itself retaining any supervision of the work, and the building being well built and strong, was not liable for the accident, caused by the accumulation of snow and

rubbish on the roof, of which the corporation had no better knowledge than the employee. *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338; *Ackerson v. Dennison,* 117 Mass. 407; *Behm v. Armour,* 58 Wis. 1; *Manning v. Hogan,* 78 N. Y. 615; *Kelley v. Mercross,* 121 Mass. 508; *Colton v. Richards,* 123 id. 484; *Killea v. Faxon,* 125 id. 485; *Armour v. Hahn,* 111 U. S. 313. The danger was patent to the plaintiff, and he must be deemed to have assumed the risk. *Hobbs v. Stauer,* 62 Wis. 108; *Strahlendorf v. Rosenthal,* 30 id. 674; *Naylor v. C. & N. W. R. Co.* 53 id. 661; *Stevenson v. Duncan,* 73 id. 404; *Sweet 'v. Ohio Coal Co.* 78 id. 127; *Goltz v. M., L. S. & W. R. Co.* 76 id. 136. If there was any negligence, it was that of the plaintiff or his co-employees. The foreman was a fellow-servant of plaintiff. *Ewald v. C. & N. W. R. Co.* 70 Wis. 420; *Heath v. Peters,* 55 id. 405; *Anderson v. M. & St. P. R. Co.* 37 id. 321; *Brabbits v. C. & N. W. R. Co.* 38 id. 289.

For the respondent there was a brief by *Frank A. Ross* and *Eric L. Winje,* and oral argument by *Eric L. Winje.* They contended, among other things, that the corporation was guilty of negligence in not providing a safe place for the plaintiff to work, and that he was justified in obeying orders, trusting his employer to do its duty in that respect. *Green v. Banta,* 48 N. Y. Sup. Ct. 156; *Heckman v. Mackey,* 35 Fed. Rep. 353; *Anderson v. Bennett,* 16 Oregon, 515; *Cook v. St. Paul, M. & M. R. Co.* 34 Minn. 45; *Stephens v. Hannibal & St. J. R. Co.* 86 Mo. 221; 4 Am. & Eng. Ency. of Law, 66.

ORTON, J. The following are substantially the facts of this case:

In December, 1887, the appellant bank had about finished the construction of a three-story brick bank building. One B. B. Scott was the superintendent of the entire work, and one Robert Huston was the superintendent or foreman of

the mason-work, and they both employed and discharged the workmen in and about said building. There was a shed, made of boards, built under the direction of the said Scott or Huston, in the rear of the bank building, and about seven feet from it, as a shelter for brick; and a large quantity of brick was piled up in it. A short time before the accident *débris* of broken brick and mortar and other refuse had been thrown from the windows of the bank building down upon the roof of the shed, and deep and damp snows had fallen on it, and remained there, which added great weight to the roof, and finally caused it to fall. The employees of the bank had removed the snow from the nearly flat roof of the bank building as a proper precaution against its weight. The plaintiff had been employed by the bank as a common laborer about eighteen days before, and on the morning of the 3d day of December, 1887, was employed in carrying brick from the shed to the alley back of it, and while in the shed for such purpose the roof fell on him by its superincumbent weight, and badly injured him. The shed was built before the plaintiff was employed, and he did not know of the brick, mortar, and other refuse on its roof, and had not observed the snow on it. Another laborer was working with him, who heard the noise of the falling roof and escaped, while the plaintiff was caught and pinioned by it while trying to escape. The business of the bank was transacted by a board of directors, and they employed the said Scott and Huston. The plaintiff recovered $1,500, and the defendant has appealed.

1. The first point made by the learned counsel of the appellant embraces several minor propositions, such as (1) that the shed was better constructed than such sheds usually are; (2) that the master retained no supervision over its erection; (3) but employed good materials and skilled workmen in its erection.

There is no complaint that the shed was not properly

built, or of the workmen or materials. The shed fell in consequence of the unusual weight upon its roof. This makes the above propositions inapplicable and immaterial. The only pertinent position is that the bank had no more knowledge of the snow and rubbish on the roof than the plaintiff.

The defendant is a corporation that must in all cases act through officers, agents, and employees, so that the knowledge of such agents must be imputed to and is the knowledge of defendant. It is not to be supposed that the mere common laborer who threw this rubbish on the roof did so without the direction of those who had the right to do so. It was in evidence that snow, also, had been thrown from the roof of the bank building upon the roof of the shed, which added to the weight of the snow that naturally fell on it. It does not appear who placed this additional weight on the roof of the shed. Those under whose direction it was done knew of it, and they might have reasonably supposed that it would endanger the roof. The common laborers who did the work are not presumed to have known that such additional weight to the roof would be allowed to remain there until it caused the roof to fall. It did not fall while it was being placed there. Wherein, therefore, were they who did the work negligent? It was the constant and increasing pressure of its weight that made the roof fall. Those who let it remain there were guilty of the negligence, and they were those who were acting in the place of the company, and for whose acts the company was responsible.

The company, therefore, knew that there was danger to the roof in letting the rubbish and snow remain on it. The plaintiff testified that he did not know of it, and had not observed it. It was certainly not within the common observation of the plaintiff and others who were engaged in carrying brick out of the inside of the shed, so that they might be presumed to know of it. Everything done about

that building or the shed must have been done under the direction and supervision of either Mr. Scott or Mr. Huston, and they acted in all things for and in place of the company. They had the sole control of all things for the corporation, and exercised all the power, judgment, and discretion of the corporation, and filled the place of masters in all things within their powers and duties as superintendents. They not only employed men, and paid them, but they directed them what to do. There is no chance for an argument that these two men were not vice-principals in respect to the plaintiff and other employees. The facts of the case, therefore, make the first point in the appellant's brief impertinent and inapplicable.

2. The next point made by the learned counsel of the appellant is in part but a repetition of the first, but, in addition, that, if the plaintiff, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against his employer merely because the business might be carried on in a safe mode. But the plaintiff did not know of this hazard in his employment, and that is a sufficient answer to this point. The learned counsel very candidly, in this connection, state the following proposition, that appears to be quite applicable to the case made by the evidence: "But if there are increased perils in the business, by reason of the use of defective appliances or otherwise, known to the master, or for which he is responsible, and unknown to the servant, if the latter is injured thereby, and is free from negligence, the master is liable." The facts show that there were "increased perils in the business" by this increased weight of the roof above the plaintiff's head, and out of his sight, which rendered "the appliances of his labor defective, and which were known to the master, and for which he was responsible, and unknown to the plaintiff, and he was free from negligence." That being so, the learned

counsel admit that the defendant bank is liable. This seems to be a fair and truthful statement of the plaintiff's case, and a correct statement of the law.

3. The learned counsel of the appellant further contend that if there was negligence it was that of the plaintiff or of his co-employees, and that the carpenters who built the shed, and the workmen who threw the rubbish and snow on the roof, and Huston, the foreman and superintendent of the mason-work, were the co-employees of the plaintiff.

There is no evidence that the shed was not properly built. Its having fallen in is no evidence that it was not, because all the witnesses agree that it was the rubbish and snow thrown upon it that caused it to fall. We have already seen that the employees who threw the rubbish and snow upon the shed were not negligent. The roof did not fall while they were at work, and there is no evidence that they supposed the rubbish and snow would be allowed to remain there. They had the right to suppose that they would be directed to throw it off. Then, again, they were incapable of judging how much weight the roof would bear, and to decide, even in their own minds, that it was thereby rendered liable to fall. This was not their business, and no part of their employment. They were there to obey the instructions of the foreman or superintendent, and not to plan the work or make mathematical calculations of the strength of the roof. If these workmen were fellow-servants of the plaintiff when they did this work, not the least negligence can be imputed to them. Mr. Scott and Mr. Huston were skilled mechanics, and were employed by the company because they were so, and they were capable of forming a reliable opinion and an intelligent judgment as to how much weight such a shed would bear; and they, or one of them, was present, superintending the work, in the place of the corporation, as vice-principal. It was their business to know that such an increased weight thrown on

the roof and remaining there would cause it to fall as it did fall. It was most clearly their negligence, and, if theirs, it was also that of the corporation, that the roof was so overloaded as to break it down. All of these points are sufficiently answered by the facts of the case, and all the legal positions assumed · by the learned counsel of the appellant are clearly inapplicable to the case.

It is elementary law that the master must furnish a safe place in which he requires his servant to work, and furnish him with safe appliances. The defendant is liable to the plaintiff for an injury caused by its agents permitting such a weight to be thrown and remain on the roof of the shed in which the plaintiff was required to do his work as to render his work unnecessarily hazardous. *Bessex v. C. & N. W. R. Co.* 45 Wis. 477. The general duty of a master to exercise care to prevent the exposure of his · servant to unnecessary and unreasonable risk requires him, among other things, to use diligence in seeing that the place where he works is safe. *Cook v. St. P., M. & M. R. Co.* 34 Minn. 45; *McDonald v. C., St. P., M. & O. R. Co.* 41 Minn. 439; 2 Thomp. Neg. § 772. The act of the defendant in ordering the plaintiff to work in a place that was not safe, and which caused him injury, makes the defendant liable if the defendant knew or ought to have known that such place was unsafe, although the negligence of a fellow-servant may have contributed to the injury, if he was himself free from fault. *McMahon v. Henning,* 3 Fed. Rep. 353; *Heckman v. Mackey,* 35 Fed. Rep. 353. If the injury was caused by the negligence of the defendant corporation in requiring the plaintiff to work in a dangerous place, the negligence of a co-employee will not defeat a recovery. *Stetler v. C. & N. W. R. Co.* 46 Wis. 497; *Paulmier v. Erie R. Co.* 34 N. J. Law, 151. In view of the authorities in application to the facts, the liability of the defendant in this case seems to have been established. The superin-

tendent, Scott, and the foreman, Huston, were responsible between them for the falling of the shed.  They probably ordered the rubbish and the snow to be thrown on the shed, and at least knew of it. . They ordered the snow to be thrown from the roof of the bank building upon the shed, to keep it from breaking down the roof of that building, but were careless and negligent as to its greater liability to break down the roof of the shed.  They made a " dead fall," and required the plaintiff to work under it.

4. The only exception noticed in the brief of the learned counsel of the appellant to the instructions of the court is to the following sentence: "If you find that he [plaintiff] is not guilty of any want of ordinary care which contributed directly towards his injury, he is entitled to recover." The learned judge had gone over fully every question involved in the case, and all the conditions of the plaintiff's recovery or defeat, before giving this instruction, and afterwards repeated them.  The jury could not possibly have understood that the finding of this one fact entitled the plaintiff to recover.  It is an unfair, garbling criticism of the charge.  There is no written work, not excepting the sacred Scriptures, that could not be condemned by garbled and selected passages cut out and carried away from the context.  All the other conditions upon which the plaintiff would be entitled to recover had been given, and were afterwards repeated, and the instructions, taken together, as they should be, are perfect or beyond criticism.  This is no error.  *Goll v. Manhattan R'y Co.* 5 N. Y. Supp. 185, 24 N. Y. St. Rep. 24.  We are unable to find that any error was committed in the trial, or that any principle of law was violated by the plaintiff's recovery.

*By the Court.*— The judgment of the circuit court is affirmed.